**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

MARSAINAH FERRELL,         )
                                     )
      Plaintiff,           )     Case No. 1:24-cv-01044-TWT
                                     )
v.                            )
                                   )     [Removed from the State Court
META PLATFORMS, INC. d/b/a    )     of Henry County, Georgia,
INSTAGRAM,              )     CAF No. STSV2024000022]
                                   )
      Defendants.        )

## DEFENDANT META PLATFORMS, INC.'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT

Defendant Meta Platforms, Inc. ("Meta"), pursuant to the Federal Arbitration Act ("FAA") hereby moves this Court to compel arbitration of the above captioned case. Should the Court determine that this case is not arbitrable, pursuant to Fed. R. Civ. P. 12(b), Meta in the alternative moves to dismiss this case.

## INTRODUCTION

When Plaintiff Marsainah Ferrell ("Plaintiff") opened an account to use the Instagram service, she agreed to the Instagram Terms of Use, which contains a valid and enforceable arbitration clause. For any claims or dispute she had against Meta relating to Instagram, Plaintiff agreed to resolve such claims or disputes through

binding arbitration.[1]

Meta is a California-based technology company that operates the Instagram service. Plaintiff, a resident of Stockbridge, Georgia seeks to adjudicate claims relating to her "verified business Instagram account." [Dkt. 4] Am. Compl. ¶ 4. She alleges that she executed contracts with third parties to promote the goods and services of various entities on her account and that, by suspending her account, Meta is liable for all damages she incurred when these entities terminated her contracts and her promotional reach decreased. She alleges seven counts against Meta including negligence, breach of contract, and tortious interference with contract. *Id*. ¶¶ 21-48. Because each of Plaintiff's claims concern Instagram, Plaintiff should be compelled to arbitrate her dispute in accordance with the parties' agreement.

Even if this Court deems that Plaintiff's claims are not arbitrable, the case should be dismissed on three independent grounds.

*First*, the Amended Complaint should be dismissed for improper venue. Plaintiff's claims cannot proceed in this Court because the parties agreed to resolve all non-arbitrable claims between Plaintiff and Meta in California.

*Second*, the Amended Complaint should be dismissed for failure to state a claim upon which relief can be granted. Plaintiff's breach of contract claim should

---

[1] The parties also agreed that Plaintiff could bring her claims in a local small claims court. However, given that Plaintiff seeks damages exceeding $2 million, her claims cannot be litigated in a Georgia small claims court.

be dismissed because she does not specify what provisions of any contract Meta allegedly breached. Her negligence claims should be dismissed because as a matter of law Plaintiff cannot maintain an action in tort where a valid and enforceable contract governs the duties and obligations between the parties and where the contract expressly disclaims liability for claims asserted. Plaintiff's tortious interference claim should be dismissed because she does not allege that Meta acted with malicious intent.

*Third* and lastly, Plaintiff's claims are barred by Section 230 of the Communications Decency Act.

## FACTUAL BACKGROUND

### I.    Plaintiff's Allegations

Plaintiff is a resident of Stockbridge, Georgia. Am. Compl. ¶ 1. She alleges that she maintained a "verified business account" on Instagram with alleged "907,000 followers and an engagement reach of 6 million impressions per week." *Id*. ¶¶ 4, 5. She further alleges that for two years she paid a monthly fee to use Instagram's marketing tools to promote herself as a social media influencer. *Id.* Plaintiff goes on to state that she used her account to promote the products and services of businesses and third parties on her page. *Id.* ¶ 6. Plaintiff alleges that several companies gave her cash and services in return: Hollywood Perfect Smile, BioLume, and FENIX Designs Internet. *Id.* ¶¶ 8, 10, 36.

Plaintiff alleges on or about December 22, 2023, she lost access to her Instagram account. *Id.* ¶ 12. Plaintiff alleges the lost access was attributed to violations of the Instagram Community Guidelines. *Id.* She alleges that when her page was suspended, the companies she was promoting severed their relationships with her. *Id.* ¶¶ 9, 13, 36. Finally, while Plaintiff concedes that Instagram restored her account on or about January 1, 2024—a mere eight days after she allegedly lost access—and purportedly classified her suspension as a mistake, the number of subscribers on her account had already fallen from 907,000 to 25,200, the number of impressions her content received had fallen from 3,814,515 to 192,301, and she lost account content. *Id.* ¶¶ 14-20.

As a result, Plaintiff alleges seven counts. The first four counts allege negligence, but they allege the same negligent act: the suspension of Plaintiff's Instagram account. *Id.* ¶¶ 21-36. Each count lists different damages. The first is the loss of her account content, while the next three are the termination of each of Plaintiff's promotional contracts. The fifth count (misnumbered Count IV) alleges that Instagram breached an unspecified contract that it entered into with her when she paid a monthly fee to use Instagram's verified business services. *Id.* ¶¶ 37-40. The sixth count (misnumbered Count V) alleges that Meta has interfered with the contract between Plaintiff and Hollywood Perfect Smile. *Id.* ¶¶ 41-44. The seventh (misnumbered Count VI) alleges tortious interference with the contract between

Plaintiff and BioLume. *Id.* ¶¶ 45-48. Plaintiff seeks $2,751,093 in damages for the first four counts as well as punitive damages. *Id.* ¶¶ 49-50.

## II.    Instagram's Terms of Use

By voluntarily creating her Instagram account, Plaintiff agreed to the Instagram Terms of Use, attached as Exhibit 1, which require her to bring all disputes against Meta relating to Instagram in arbitration.[2]

The Instagram Terms of Use contain a mandatory arbitration provision:

> Except as provided below, you and we agree that any cause of action, legal claim, or dispute between you and us arising out of or related to these Terms or Instagram ("claim(s)") must be resolved by arbitration on an individual basis… The following claims don't have to be arbitrated and may be brought in court: disputes related to intellectual property (like copyrights and trademarks), violations of our Platform Policy, or efforts to interfere with the Service or engage with the Service in unauthorized ways (for example, automated ways).

Ex. 1 § How We Will Handle Disputes (Instagram Terms of Use). For any claims not arbitrated, there is also a forum selection clause that sets venue for disputes in a court in California:

---

[2] Meta respectfully requests that the Court take judicial notice of the Instagram Terms of Use. Judicial notice is appropriate where the fact is "not subject to reasonable dispute" because it is "generally known" or "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994). Courts throughout the country have found terms of service posted on the internet appropriate for judicial notice. *See, e.g., Force v. Facebook,* 934 F.3d 53 (2d Cir. 2019) (explaining that Facebook's publicly available terms of service are subject to judicial notice); *Lloyd v. Facebook, Inc.*, 2022 WL 4913347, at *8 (N.D. Cal. Oct. 3, 2022) (citing cases finding judicial notice of publicly accessible terms of service appropriate); *Patel v. Univ. of Vermont & State Agric. Coll.,* 526 F. Supp. 3d 3, 19 (D. Vt. 2021) (finding judicial notice of terms of use appropriate and citing cases in support).

> For any claim that is not arbitrated or resolved in small claims court, you agree that it will be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County. You also agree to submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim. The laws of the State of California, to the extent not preempted by or inconsistent with federal law, will govern these Terms and any claim, without regard to conflict of law provisions.

*Id.* Additionally, pursuant to the Instagram Terms of Use, California law governs the agreement and any claim between Plaintiff and Meta relating to Instagram:

> The laws of the State of California, to the extent not preempted by or inconsistent with federal law, will govern these Terms and any claim, without regard to conflict of law provisions.

*Id.*

## III.    Meta Commercial Terms

By using Instagram for a business or commercial purpose, Plaintiff also agreed to be bound by the Meta Commercial Terms (the "Commercial Terms"). The Commercial Terms define "Commercial Claims" as "any claim, cause of action, or dispute that arises out of or relates to any accessor use of the Meta Products for business or commercial purposes." *See* Exhibit 2 (Meta Commercial Terms) ¶ 5(b). Plaintiff agreed to arbitrate her Commercial Claims arising from her business use of Instagram. *See id.* ¶ 5(c).

Although Plaintiff does not attach the Instagram Terms of Use or the Commercial Terms to her Amended Complaint, failure to attach these terms does not preclude them from the Court's review on a motion to dismiss. In ruling on a

motion to dismiss, a court within the Eleventh Circuit may consider a document attached to the motion to dismiss without converting the motion into one for summary judgment if the document (1) is central to the plaintiff's claim and (2) is undisputed. *See Horsley v. Feldt,* 304 F.3d 1125, 1134 (11th Cir. 2002).

## **ARGUMENT**

## I.    **The FAA Requires Enforcement of Arbitration Agreements.**

Under the FAA, arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011).

The FAA applies to any written agreement to arbitrate that appears in "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. As the Supreme Court has explained, the FAA constitutes "the broadest permissible exercise of Congress' Commerce Clause power," and covers not only interstate transactions, but also intrastate transactions of a type that "in the aggregate" would have a "substantial effect on interstate commerce." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-57 (2003) (internal quotation marks omitted).

Here, both criteria are met: (i) Meta's arbitration provisions are in writing

(Exs. 1 and 2); and (ii) online social media platforms, such as Instagram, are an instrumentality of interstate commerce. *See, e.g., United States v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004) ("[T]he Internet is an instrumentality of interstate commerce."); *United States v. Borrero*, 771 F.3d 973, 975 (7th Cir. 2014) (same). Moreover, the parties acknowledged in the Terms of Use and the Commercial Terms that the Federal Arbitration Act governs the enforcement and interpretation of the arbitration provisions. Ex. 1 at 6; Ex. 2 ¶ 5(c)(ii).

Courts across the country have found Meta's arbitration provisions enforceable. *See Lag Shot LLC v. Facebook, Inc.*, No. 21-CV-01495-JST, 2021 WL 2660433 (N.D. Cal. June 25, 2021) (enforcing the arbitration clause in Facebook's Commercial Terms); *Kangapoda Corp. v. Facebook, Inc.*, No. CV 21-9168-JXN-AME, 2021 WL 11721658, at *3 (D.N.J. Dec. 13, 2021) (same); *McMahon v. Meta Platforms, Inc.*, No. 2:23-CV-00171-RSL, 2023 WL 4546377, at *3 (W.D. Wash. July 14, 2023) ( same); *see also Whalen v. Facebook, Inc.*, 2022 WL 19934419, at *4 (N.D. Cal. Apr. 11, 2022) (enforcing the arbitration clause in the Instagram Terms of Use).

Accordingly, as shown below, this Court should compel arbitration as the parties agreed to in the Instagram Terms of Use.

II.    **The Arbitration Provision in the Instagram Terms of Use Should Be Enforced.**

A.    **The Parties Agreed to Arbitrate Plaintiff's Claims.**

By bringing a lawsuit alleging breach of contract, Plaintiff acknowledges that the relationship between her and Meta is governed by contract. *See* Am. Compl, ¶¶ 37-40. The Instagram Terms of Use set forth the terms and conditions of the parties' agreement, which states that parties "**agree that any cause of action, legal claim, or dispute between [the parties] arising out of or related to these Terms or Instagram ('claim(s)') must be resolved by arbitration on an individual basis.**" Ex. 1 (emphasis in original). Additionally, the Commercial Terms also state that Plaintiff agrees to arbitrate any Commercial Claims she has against Meta. Ex. 2 ¶ 5(c)(i). Accordingly, the Instagram Terms of Use and the Commercial Terms establish that the parties agreed to arbitrate the claims Plaintiff asserts in her Amended Complaint.

B.    **The Parties' Arbitration Agreement Encompasses Plaintiff's Claims.**

The Terms of Use arbitration provision broadly applies to "any cause of action, legal claim, or dispute between you and us arising out of or related to these Terms or Instagram . . .." Ex. 1. The Commercial Terms arbitration provision applies to "any claim, cause of action, or dispute that arises out of or relates to any access or use of Meta's Products for business or commercial purposes." Ex. 2 ¶ 5(b).

Plaintiff's claims arise out of and relate to Instagram where Plaintiff alleges that Meta was negligent, breached the contract between the parties, and interfered with Plaintiff's other contractual relationships by disabling her Instagram account. Am. Compl. ¶¶ 21-48. Moreover, Plaintiff's claims arise out of and relate to access and use of Instagram for business or commercial purposes where she alleges she maintained a verified business account. Am. Compl. ¶¶ 4-5.

These arbitration provisions are applicable to Plaintiff's claims whether they sound in tort or contract. This is because both Meta's alleged conduct and Plaintiff's alleged injury pertain directly to her Instagram account and her business use of the account. She brings this suit because Meta suspended her account and claims she was injured because the account suspension caused her to lose access to her valuable content and promotional contracts. *Id*. ¶¶ 9, 13, 36, 17. Indeed, when faced with similar claims and similarly broad arbitration language, the Eleventh Circuit has unequivocally found that arbitration language like that in the Terms of Use encompass such facts. *See Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1222 (11th Cir. 2000) ("The language of the clause at issue is brief, unequivocal and all-encompassing . . . [and b]y using this inclusive language, the parties agreed to arbitrate any and all claims against each other, with no exceptions.").

Even if there were any doubt as to whether Plaintiff's claims against Meta fall within the scope of the arbitration agreements, "as a matter of federal law, any

doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *JPay, Inc. v. Kobel*, 904 F.3d 923, 929 (11th Cir. 2018) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)); *see also Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1417-19 (2019); *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1115 (11th Cir. 2014).

Because the parties agreed to arbitrate any dispute arising out of or relating to Instagram for business purposes and Plaintiff's claims against Meta fall within the scope of the arbitration agreements, this Court should compel Plaintiff to arbitrate her claims.

## III.    The Amended Complaint Should Be Dismissed for Improper Venue.

Should this Court deem that Plaintiff's claims are not arbitrable, she cannot litigate her claims in Georgia because the valid and enforceable forum selection clause requires that Plaintiff bring suit in California. *See* Ex. 1 ("For any claim that is not arbitrated or resolved in small claims court, you agree that it will be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County.").[3] The Northern District of Georgia holds that "forum selection clauses are prima facie valid, and, where the parties have by

---

[3] The Commercial Terms also require litigation in a California court. *See* Ex. 2 ¶ 5(c)(i) ("If a Commercial Claim between you and Meta Platforms, Inc. is not subject to arbitration, you agree that the claim must be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County, and that you submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim.").

contract selected a forum, it is incumbent upon the party resisting to establish that the choice was unreasonable, unfair, or unjust." *Campbell Roofing & Constr., Inc. v. Denark Constr., Inc.*, No. 1:05-CV-1003-CAP, 2005 WL 8155361, at *1 (N.D. Ga. Aug. 4, 2005).

Where a complaint is filed in the improper venue and there is no other Georgia court in which venue would be proper, the appropriate response is to dismiss the case under Fed. R. Civ. P. 12(b)(3). *See Ploharski v. EBay Inc.*, No. 1:00-CV-0799, 2000 WL 35778242, at *2 (N.D. Ga. Aug. 2, 2000) (dismissing complaint in the Northern District of Georgia where a forum selection clause required that any cause of action must be brought exclusively in a court in San Jose, California).

To invalidate a forum-selection clause, the opposing party must demonstrate that (1) their formation was induced by fraud or overreaching; (2) the plaintiff would effectively be deprived of its day in court because of the inconvenience and unfairness of the chosen forum; (3) the fundamental unfairness of the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of such provisions would contravene a strong public policy. Also, a plaintiff must specifically allege that the forum selection clause was included in the agreement because of fraud when seeking to invalidate it. *See Xena Invs., Ltd. v. Magnum Fund Mgmt. Ltd.*, 726 F.3d 1278, 1285 (11th Cir. 2013).

While Plaintiff may argue that litigating in California is less convenient for her, mere inconvenience is insufficient. *See id*. Plaintiff cannot meet her burden of establishing that litigating her claims in California would be so inconvenient that she would be deprived of her day in court. Furthermore, there is no allegation that Plaintiff's agreement to the Instagram Terms of Use was obtained by fraud. *See id.* In short, there is no allegation to support a claim that it would be unreasonable or unfair to enforce the forum selection clause.

Further, public policy affirmatively favors the enforcement of this forum selection clause. This is because "striking [Meta's] forum selection clause could wreak havoc on the entire social-networking internet industry." *Miller v. Facebook, Inc.*, No. 1:09-CV-2810-RLV, 2010 WL 9525523, at *1 (N.D. Ga. Jan. 15, 2010) (granting motion to transfer based on Meta's forum selection clause). Courts around the country have routinely held that Meta's forum selection clause is valid and enforceable. *See, e.g., Johnson v. Meta Platforms, Inc.*, No. 22-cv-00033-RDB, 2022 WL 4777586, at *3 (D. Md. Oct. 3, 2022) (granting motion to transfer to N.D. Cal. pursuant to forum selection clause); *Loomer v. Facebook, Inc.*, No. 19-CV-80893, 2020 WL 2926357 at *3 (S.D. Fla. Apr. 13, 2020); *Hayes v. Facebook, Inc.,* No. 18-cv-02333-MEH, 2019 WL 8275335, at *3 (D. Colo. Mar. 6, 2019) (same); *Kidstar v. Facebook, Inc.*, No. 2:18-cv-13558, 2020 WL 4382279, at *3 (D.N.J. July 31, 2020) (same).

13

Accordingly, the valid and enforceable forum selection clause mandates litigating Plaintiff's claims in California if the dispute is not resolved through arbitration and therefore, the Amended Complaint should be dismissed.

## IV. This Case Should Be Dismissed Under Fed. R. Civ. P. 12(b)(6) for Failure to State a Claim.

Federal courts grant a defendant's motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) when the plaintiff "fails to allege facts sufficient to raise a right to relief above the speculative level or fails to state a claim to relief that is plausible on its face." *Jacob v. Mentor Worldwide, LLC,* 40 F.4th 1329, 1334 (11th Cir. 2022). Here, Plaintiff's Amended Complaint alleges counts including negligence, breach of contract, and tortious interference with contract. Am. Compl. ¶ 21-48. Per the Terms of Use, California state law governs claims arising out of or relating to Instagram. *See* Ex. 1.

Under any plausible reading of the Amended Complaint, Plaintiff's claims are predicated on the Instagram Terms of Use to which the parties are bound.

### A. Plaintiff Fails to State a Claim for Breach of Contract.

#### 1. Plaintiff Has Not Identified the Specific Contract Provision Violated.

"To properly plead breach of contract, the [breached] terms must be set out verbatim in the body of the complaint." *Harris v. Rudin, Richman & Appel*, 74 Cal. App. 4th 299, 307 (1999); *see also Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d

1056 (N.D. Cal. 2016) ("To properly plead breach of contract, '[t]he complaint must identify the specific provision of the contract allegedly breached by the defendant.'") (internal citation omitted), *aff'd*, 700 F. App'x 588 (9th Cir. 2017). Failure to identify the specific contract provision is fatal to a plaintiff's claim for breach. *See, e.g.*, *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011) (dismissing breach of contract claim where plaintiff failed to allege specific provision that Facebook purportedly violated); *Ebeid v. Facebook, Inc.*, No. 18-cv-7030-PJH, 2019 WL 2059662, at *7 (N.D. Cal. May 9, 2019) (same). Georgia law agrees. *See Crayton v. JPMorgan Chase Bank, N.A.*, No. 1:16-CV-577-TWT, 2017 WL 5133224, at *5 (N.D. Ga. Nov. 6, 2017) (holding that "to succeed on a breach of contract claim in Georgia, a plaintiff must allege a particular contractual provision that the defendant violated.").

Here, the Amended Complaint fails to articulate the contract or contractual provision at issue. Plaintiff's fifth count, her only Breach of Contract count, states only that she entered into a "monthly contract" with Meta whereby she paid Meta a fee for Instagram services and Meta "breached said contract . . . by suspending her verified business Instagram account." Am. Compl. ¶¶ 38-39. She does not, and cannot, allege that there is a specific contract she signed that contained a provision whereby Meta would guarantee maintenance of her account in return for cash payments; no such contract exists. The lack of specificity as to which contract and

which contractual provision is fatal to Plaintiff's breach of contract claim and it should be dismissed on this ground alone.

Moreover, the Terms of Use expressly provide that Meta may, in response to violative conduct, "remove any content or information you share on the Service" and "can refuse to provide or stop providing all or part of the Service to you (including terminating or disabling your access to the Meta Products and Meta Company Products) immediately to protect our community or services . . .." *See* Ex. 1. The Terms of Use provide Meta broad discretion to disable an account. Accordingly, the deactivation of Plaintiff's Instagram account cannot—as a matter of law—give rise to an action for breach of contract, as numerous courts have held. *See, e.g.*, *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 206 (2017) (dismissing breach of contract claim related to content removal); *Young*, 790 F. Supp. 2d at 1117 (finding no provision prohibited Facebook from terminating an account in the manner alleged); *King v. Facebook, Inc.*, No. 19-cv-01987, 2019 WL 6493968, at *2 (N.D. Cal. Dec. 3, 2019) (same). Like the terms of service at issue in those cases, the Terms of Use here define Meta's obligations, and nothing in them obligates Meta to provide continued access to a user's account.

### 2.    The Terms of Use Preclude Liability in This Circumstance.

Plaintiff's breach of contract claim should also be dismissed because any recovery is limited by the enforceable limitation of liability provision in the Terms

of Use. Waivers of liability that are "clear, unambiguous, and explicit bar claims that expressly fall within their scope." *Murphy v. Twitter, Inc.,* 60 Cal. App. 5th 12, 25 (2021). Here, Meta disclaims liability for certain damages, including "any lost profits, revenues, information, or data, or consequential, special, indirect, exemplary, punitive, or incidental damages arising out of or related to these Terms, even if we know they are possible." Ex. 1 § Who Is Responsible if Something Happens. The subsection goes on to note that "this includes when we delete your content, information, or account." Thus, even if Plaintiff *could* assert a breach of contract based on the loss of access to her account, Meta is not liable for any damages arising from that loss, including but not limited to the alleged loss of account content, promotional reach, or modeling opportunities. *See Lewis v. YouTube, LLC*, 244 Cal. App. 4th 118, 125 (2015) (enforcing YouTube's limitation of liability clause which encompassed plaintiff's claim that YouTube wrongfully failed to include her videos on its website); *King v. Facebook Inc.*, No. 21-cv-04573, 2022 WL 1188873, at *6 (N.D. Cal. Apr. 20, 2022) (barring claims for special damages due to Facebook's Terms of Use limitation of liability provision).

Accordingly, Plaintiff's claim for breach should be dismissed for failure to state a claim.

**B.    Plaintiff Fails to State a Claim for Negligence.**

Plaintiff's four negligence claims should be dismissed because they are all

identical to her breach of contract claim. Her four negligence counts state that Meta "had a duty to maintain" her account "because she paid for services" and Meta "breached that duty by suspending said account." Am. Compl. ¶¶ 21-36. She goes on to allege in her breach of contract claim that "Plaintiff and Defendant entered into a monthly contract when the Plaintiff paid her monthly fee to the Defendant for Defendant's verified business Instagram services" and "Defendant breached said contract by…suspending her verified Instagram account . . .." *Id.* ¶¶ 38-39. However, a tort cannot be based on the breach of a contractual duty only; it must violate a duty owed to plaintiff independent of the contract. *See Wanna v. Navicent Health, Inc.*, 357 Ga. App. 140, 158 (2020); *see also Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 515 (1994) (holding that "conduct amounting to a breach of contract becomes tortious only when it also violates an independent duty arising from principles of tort law."). As Plaintiff has not alleged any duty outside of the duty she alleges that attaches to a contract, her negligence claims are due to be dismissed.

Accepting for the sake of argument Plaintiff's negligence theory, Plaintiff cannot establish that Meta owed Plaintiff a duty to make her Instagram account available, and in fact, the Terms of Use suggest the opposite. *See* Ex. 1 § Who Is Responsible if Something Happens ("Our service is provided 'as is,' and we can't guarantee it will be safe and secure or will work perfectly all the time."). In this

regard, Plaintiff cannot overcome the limitation of liability clause in the Terms of Use that limit Meta's liability "to the extent permitted by law" for any issues that arise from use of the Meta Products, and states users "agree that [Meta] won't be responsible for any lost profits, revenues, information, or data, or consequential, special, indirect, exemplary, punitive, or incidental damages arising out of or related to these Terms, even if we know they are possible. ***This includes when we delete your content, information, or account***." (emphasis added). *Id.*

Moreover, even if Plaintiffs had adequately alleged a negligence claim, the economic loss doctrine bars any recovery. *See D.J. Powers Co., Inc. v. Peachtree Playthings, Inc.*, 348 Ga. App. 248, 254 (2018) (the economic loss rule "provides that a contracting party who suffers purely economic losses must seek his remedy in contract and not in tort."); *Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905, 923 (2022), reh'g denied (June 1, 2022) (the economic loss rule "functions to bar claims in negligence for pure economic losses in deference to a contract between litigating parties.").

The sum of Plaintiff's allegations related to negligence are that Meta "had a duty to maintain" her account and "breached that duty by suspending said account." Am. Compl. ¶¶ 22-23, 25-26, 28-29, 34-35. This is exactly the same allegation supporting Plaintiff's breach of contract claim; Meta allegedly breached the contract "by suspending her verified business Instagram account." Am. Compl. ¶ 39. As no

duty independent of the contract has been alleged, the negligence counts are due to be dismissed. Even assuming these claims sound in tort rather than contract, they are explicitly barred by the limitations on liability pertaining to account deletion and also by the economic loss doctrine.

## C.    Plaintiff Fails to State a Claim for Tortious Interference with Contract

Plaintiff's sixth and seventh claims are for tortious interference with the promotional contracts she signed with Hollywood Perfect Smile and BioLume. Am. Compl. ¶¶ 41-48.

"To establish a cause of action for tortious interference with existing and prospective contractual relations, a claimant must show that the defendant (1) acted improperly and without privilege, (2) purposely and with malice and intent to injure, (3) induced a third party or parties not to enter into or continue a business relationship with the plaintiff, and (4) for which the plaintiff suffered some financial injury." *Project Control Services, Inc. v. Reynolds*, 247 Ga. App. 889, 894 (2001). In order for a claim for tortious interference of contract to stand, a plaintiff must allege "intentional acts designed to induce a breach or disruption of the contractual relationship." *Hahn v. Diaz-Barba*, 194 Cal. App. 4th 1177, 1196 (2011); *see also Mabra v. SF, Inc.,* 316 Ga. App. 62 (2012) (the Georgia rendition of this element is acting "purposely and with malice with the intent to injure.").

Nowhere in Plaintiff's Amended Complaint does she allege the requisite

intent. In each tortious interference claim she alleges that Meta "was aware" of her popularity and "knowingly suspended her account," and in her Punitive Damages section she alleges that Meta's conduct "demonstrates a willful and conscious indifference to the consequences of its actions." These allegations fall well short of the requirement that Meta acted with the intent to injure Plaintiff by interfering with her promotional contracts. Thus, her tortious interference with contract claims should be dismissed.[4]

## V.    This Case Should Be Dismissed Because Section 230 Bars Plaintiff's Claims.

Plaintiff's claims independently fail because each is barred as a matter of law by Section 230 of the Communications Decency Act. 47 U.S.C. § 230 *et al*. Section 230(c)(1) states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another

---

[4] In addition, Georgia law requires that a plaintiff plead facts that establish that the defendant was a stranger to the contract at issue. *See Jet Air v. Nat. Union Fire Ins. Co.,* 189 Ga. App. 399, 403–04 (1988). Under the facts alleged here, Plaintiff's contracts with Hollywood Perfect Smile and BioLume were apparently contingent upon her use of the Instagram platform. Am. Compl. ¶¶ 8-9. Accordingly, Meta cannot be a stranger to a contract where the contract is dependent in some manner on Meta. *Sci. Games Int'l, Inc. v. Merit Ink & Coating Co.*, No. 2:04-CV-170-RWS, 2006 WL 8433795, at *11 (N.D. Ga. Sept. 27, 2006) ("If a party is (1) an essential entity to the purported injured relations; or (2) the allegedly injured relations are inextricably a part of or dependent upon the party's contractual or business relations; or (3) the party would benefit economically from the alleged injured relations; or (4) both the party and the person claiming injury are parties to a comprehensive, interwoven set of contracts or relations, it is not a stranger to the injured relations and therefore cannot tortiously interfere as a matter of law.") (citation omitted, alterations accepted).

information content provider." 47 U.S.C. § 230(c)(1). Section 230(e)(3) gives teeth to this intent by stating unequivocally that "[n]o cause of action may be brought, and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3).

Under Section 230(c)(1), a claim is barred if: (1) the defendant is a service provider or user of an interactive computer service, (2) the information at issue was provided by a content provider other than the defendant, and (3) the cause of action treats the defendant as a publisher or speaker of the information. *See Internet Brands, Inc. v. Jape*, 328 Ga. App. 272, 276 (2014); 47 U.S.C. § 230(c)(1). Plaintiff's claims meet all three criteria under Section 230 and should therefore be dismissed.

### A.    Instagram Is an Interactive Computer Service Provider.

Section 230 defines an interactive computer service provider as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). Courts have uniformly held that the Instagram service meets Section 230's "interactive computer service" definition. *See, e.g.*, *Franklin v. X Gear 101, LLC*, No. 17CIV6452GBDGWG, 2018 WL 3528731, at *19 (S.D.N.Y. July 23, 2018) ("[B]ecause we see no difference between Instagram and the other platforms held to be providers of an interactive computer service, we conclude that Instagram so qualifies as well".); *Marfione v. KAI U.S.A., Ltd.*, No. CV 17-70, 2018 WL1519042,

at *6 (W.D. Pa. Mar. 28, 2018) ("[plaintiff] is a user of an 'interactive computer service', i.e., Instagram"). Accordingly, the first Section 230 requirement is satisfied here.

### B.    The Content at Issue Was Supplied by Another Information Content Provider.

Section 230 bars claims when the content at issue for which a plaintiff seeks to hold a defendant liable comes from an "information content provider" other than the defendant. 47 U.S.C. § 230(c)(1). Here, the content at issue is the information posted to Plaintiff's account. Plaintiff acknowledges that she—not Meta—created the content. *See* Am. Compl. ¶ 6 (Plaintiff "promote[d] the services, products of business of third party companies such as fitness, medical and dental services and workout supplements on that same Instagram account."); *Jefferson v. Zuckerberg*, No. RDB-17-3299, 2018 WL 324134, at *5 (D. Md. July 3, 2018) (requirement met where "nothing in the Complaint suggests that Facebook was itself 'responsible' for the 'creation' or 'development' of any content"). The Amended Complaint contains no allegations that Meta provided or otherwise contributed any content. Because all content at issue here was supplied by an information content provider other than Meta—namely Plaintiff herself—the second Section 230 requirement is met.

### C.    The Amended Complaint Seeks to Hold Meta Liable for Its Purported Exercise of a Publisher's Traditional Editorial Functions.

Under Section 230, a claim seeks to treat a defendant as a publisher when it

seeks to hold a service provider liable for its exercise of traditional editorial functions—such as deciding whether to publish, withdraw, postpone, or alter content. *See Dowbenko v. Google Inc.*, 582 F. App'x 801, 805 (11th Cir. 2014) (citing *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir.1997)). "[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1170-71 (9th Cir. 2008).

Here, Plaintiff's Amended Complaint is exactly the type of lawsuit Section 230 bars. Plaintiff seeks to hold Meta liable for damages allegedly arising from the decision to briefly suspend her account, a traditional editorial function under Section 230. *See* Am. Compl. ¶¶ 23, 26, 29, 35, 39, 42, 46; *McCall v. Zotos,* No. 22-11725, 2023 WL 3946827, at *3 (11th Cir. June 12, 2023). Accordingly, the third Section 230 requirement is met. Therefore, with all three requirements met, Section 230 bars Plaintiff's claims, and this Court should dismiss the Amended Complaint with prejudice. *See, e.g., Zimmerman v. Facebook, Inc.*, No. 19-cv-04591-VC, 2020 WL 5877863 (N.D. Cal. Oct. 2, 2020) (dismissing under Section 230 claims relating disabling access to plaintiff's Facebook profile); *Ebeid*, 2019 WL 2059662, at *5 (dismissing under Section 230 claim predicated on restricting or suspending access to account).

**VI.    The Claims Against Meta Should Be Dismissed with Prejudice Because Amendment Would Be Futile.**

"[A]n opportunity to amend need not be given if amendment would be futile." *Sadiq v. Weller*, 610 F. App'x 964, 964 (11th Cir. 2015) (citing *Iqbal*, 556 U.S. at 678). A second amendment would be futile if, as here, Plaintiff cannot plead any facts that would cure the defects in her first amended pleading, such that any second amendment would still fail to state a viable claim. *See Oltmanns v. Int'l Longshoremen's Ass'n,* 837 F. App'x 689, 697 (11th Cir. 2020). As explained above, the arbitration and forum selection clauses in the Instagram Terms of Use control where Plaintiff can litigate her claims, and no amendment to the Complaint can change this. Accordingly, Plaintiff's Amended Complaint against Meta should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, the Court should compel Plaintiff to arbitrate, and to the extent the Court deems the claims are not subject to arbitration, then the Amended Complaint should be dismissed in its entirety with prejudice.

Respectfully submitted, this 15th day of March, 2024

<u>**s/ Jeffrey D. Horst**</u>
Jeffrey D. Horst
Georgia Bar No. 367834
Kana A. Caplan
Georgia Bar No. 621805

*Counsel for Defendant Meta*
*Platforms, Inc.*
KREVOLIN & HORST, LLC
1201 W. Peachtree St., NW
Suite 3250, One Atlantic Center
Atlanta, GA 30309
Telephone: (404) 888-9700
horst@khlawfirm.com
caplan@khlawfirm.com

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1D, the undersigned counsel hereby certifies that the foregoing **DEFENDANT META PLATFORMS, INC.'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT** complies with the font and point selections approved by the Court in Local Rule 5.1C. This document was prepared on a computer using Times New Roman font (14 point).

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this date served a copy of the foregoing **DEFENDANT META PLATFORMS, INC.'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT** by using the Court's CM/ECF filing system, which will automatically send service copies to all parties of record, and by depositing the same in the United States mail in a properly addressed envelope with adequate postage affixed thereon to ensure delivery to the following:

Marsainah Ferrell
119 Glen Eagle Way
McDonough, GA 30253

This 15th day of March, 2024.

<div style="margin-left:50%">

**<u>s/ Jeffrey D. Horst</u>**
Jeffrey D. Horst
Georgia Bar No. 367834
Kana A. Caplan
Georgia Bar No. 621805
*Counsel for Defendant Meta Platforms, Inc.*
KREVOLIN & HORST, LLC
1201 W. Peachtree St., NW
Suite 3250, One Atlantic Center
Atlanta, GA 30309
Telephone: (404) 888-9700
horst@khlawfirm.com
caplan@khlawfirm.com

</div>